IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| BRYON J. REINHART, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-263 United States Magistrate Judge |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) ) | Cynthia Reed Eddy[1] |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

Plaintiff Bryon J. Reinhart brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act").  *See* 42 U.S.C §§ 401-434, 1381-1383(f).  The parties have submitted cross motions for summary judgment and the record has been fully developed at the administrative proceedings.  For the reasons which follow, Plaintiff's Motion for Summary Judgment will be granted in part and denied in part.  Defendant's Motion for Summary Judgment will be denied.  The decision of the Commissioner is vacated, and the matter remanded to the Commissioner for further proceedings in accordance with this Opinion.

---

[1]  By consent of the parties, (ECF No. 11), and pursuant to the Federal Magistrate Judges Act, 28 U.S.C. § 636(c), the undersigned has full "authority over dispositive motions…and entry of final judgment, all without district court review."  *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D.Pa. 2007).

1

## II. Procedural History

Plaintiff protectively filed for DIB and SSI on September 15, 2010, alleging onset of disability on January 1, 2008. (R. at 150-162). The applications were denied by the state agency on January 4, 2011. (R. at 71-92). Plaintiff responded on January 20, 2011, by filing a timely request for an administrative hearing. (R. at 95-97). On April 10, 2012, an administrative hearing was held in Erie, Pennsylvania before Administrative Law Judge ("ALJ") William J. Bezego. (R. at 35-61). Plaintiff, who was represented by counsel, appeared and testified. *Id.* Additionally, an impartial vocational expert, William H. Reed, Ph.D., testified at the hearing. *Id.*

In a decision dated April 17, 2012, the ALJ determined that Plaintiff was not "disabled" within the meaning of the Act since Plaintiff's alleged onset of disability, so his claims for disability benefits were denied. (R. at 18-30). The Appeals Counsel denied Plaintiff's request for review on June 28, 2013, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1-4).

Plaintiff commenced the present action on October 4, 2013, seeking judicial review of the Commissioner's decision. (ECF No. 5). Plaintiff and the Commissioner filed cross motions for summary judgment on February 13, 2014 and April 21, 2014, respectively. (ECF Nos. 12, 16). These motions are fully briefed and ripe for disposition.

## III. Statement of Facts

### A. Background

Plaintiff was born on November 15, 1964 and was 47 years old at the time of the administrative hearing.[2] (R. at 152).[3] Plaintiff did not graduate from high school, however, he

---

[2] Plaintiff incorrectly testified that he was 49 years of age at the time of the administrative hearing. (R. at 42).

[3] Citations to ECF Nos. 10-2-10, the Record, *hereinafter*, "R. at __."

2

subsequently obtained a general equivalency diploma. (R. at 56, 305). When Plaintiff was twenty-one years old, he was convicted of conspiracy to commit homicide and served the maximum prison sentence. (R. at 44). Plaintiff subsequently violated his parole by driving without a license and was remanded to jail for an additional two years. (R. at 306). Additionally, Plaintiff completed two court ordered, inpatient rehabilitation programs pertaining to his substance abuse. (R. at 306). However, at the hearing, Plaintiff asserted that he had not abused drugs or alcohol for nearly a year while living with his brother. (R. at 48).

From 1985 to 2007, Plaintiff worked as a construction worker. (R. at 182, 188-189). Plaintiff also worked as a plastics assembler from 2005 to 2007. *Id.* Plaintiff has not worked since December 31, 2007, and has alleged an onset of disability on the following day, January 1, 2008. (R. at 152, 159).

**B.   Medical History**

   **1.   Physical Health Treatment**

The medical record provides that Plaintiff has had extensive medical treatment relating to several medical impairments. Initially, in April 2009, Plaintiff was seen by his primary care physician, Joseph W. Mercurio, D.O., and reported chronic and worsening neck, back, and right hip pain and joint stiffness as well as hypertension, depression, and anxiety. (R. at 244, 260-261). The medical tests performed on Plaintiff revealed minor degenerative disc disease of the neck and lumbar spine, but no abnormalities of the right hip. (R. at 262-264, 265-267, 275-283). In addition to treatment with Dr. Mecurio, Plaintiff has treated with at least five different physicians regarding his hip, neck, and back pain. (R. at 270, 273-275, 276, 428-429).[4] Plaintiff

---

[4]   Plaintiff began treatment with Dr. Mecurio in April 2009, and was diagnosed with hypertension, osteoarthritis, depression, and was prescribed medication and physical therapy. (R. at 257-260). Plaintiff treated with Jeffrey M. Abbott, D.O., in December 2009, and was prescribed physical therapy. (R. at 267). Plaintiff treated with Lawrence Newhook, M.D., in January 2010, and was prescribed Vicodin for

3

received some relief through medication and therapy; however, he did not experience any lasting improvement to his overall condition. (R. at 364-384, 410-430).

    **2.    Mental Health Treatment**

Plaintiff also sought treatment for several mental health impairments from various physicians. Plaintiff began seeing Omar Eslao, M.D., of Stairways Behavioral Health, in August 2009 and was assessed a GAF score of 55.[5] (R. at 293-294). Between August 2009 and September 2010 Plaintiff treated with Dr. Eslao approximately seven times. (R. at 293-302). Plaintiff consistently reported depressed mood, decreased energy, difficulty sleeping, and panic attacks. *Id*. During said sessions, Dr. Eslao noted that Plaintiff had fair attention, concentration, insight, judgment, and did not perceive suicidal ideations. *Id*. Dr. Eslao assessed Plaintiff with depressive disorder, anxiety disorder, alcohol abuse, personality disorder and prescribed antidepressant medication and therapy.[6] (R. at 293-294).

In September 2010 and October 2010, Martin Meyer, Ph.D., and Julie Uran, Ph.D., performed neuropsychological examinations on Plaintiff. (R. at 305-314). Their findings were

---

his chronic cervical degenerative disc disease. (R. at 428-429). Plaintiff treated with Thomas J. Mitchell, M.D., in February 2010, and was prescribed Vicodin for his pain and was advised to return to his treating physician, Dr. Mecurio for a follow-up. (R. at 269-270). Plaintiff treated with James R. Macielak, M.D., in July 2010, who recommended a trial of in-home traction, prescribed an anti-inflammatory medication, and recommended follow-up in four weeks, which resulted in cervical epidural injections. (R. at 273-275, 410-430).

[5] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV–TR) 34 (4th ed.2000).

[6] Plaintiff reported general improvement with his mental health conditions in response to the medication despite isolated, negative setbacks. (R. at 293-302).

4

largely consistent with those of Dr. Eslao's aside from the GAF score of 50 they assigned to Plaintiff.[7] *Id.*

On March 29, 2012, Jason Edward Rock, M.D., completed a medical source statement regarding Plaintiff's mental health conditions. (R. at 431-434). Dr. Rock opined that Plaintiff had only "slight" to "moderate" limitations in work-related activities, but ultimately concluded that Plaintiff was likely to miss a significant amount of work due to his mental health conditions and could not work on a consistent basis. *Id.*

### IV.    Administrative Decision

On April 17, 2012, the ALJ issued a written decision, finding that the Plaintiff had not been under a disability within the meaning of the Act since his alleged onset of disability, January 1, 2008. (R. at 30). The ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability and concluded that Plaintiff had the following severe impairments: degenerative disc disease, depression, anxiety disorder, personality disorder, intermittent explosive disorder, and substance abuse. (R. at 20). The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (R. at 21).

> The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to
>
> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except limited to occupations that do not require constant or prolonged rotation, flexion, or hyperextension of the neck. He may not perform work above shoulder level with the right upper extremity. The claimant is limited to only routine and repetitive tasks with only occasional interaction with the public, co-workers, and supervisors.

(R. at 23).

---

[7]    This report indicates that Plaintiff admitted to consuming a "1/5" of vodka (750 ml or approximately 25.4 ounces) the night before this evaluation. (R. at 306).

The ALJ determined that while Plaintiff could not perform any past relevant work, based upon testimony from a vocational expert, Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. at 28-30). Accordingly, the ALJ found that the Plaintiff was not disabled within the meaning of the Act. (R. at 30).

## V. Standard of Review

To be eligible for Social Security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir.1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria set forth in the Listings; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is capable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is found to be unable to resume previous employment, the burden shifts to the Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he is able to

perform substantial gainful activity in jobs in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g), 1383(c)(3); *Shaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir.1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. § 706. The District Court must then determine whether substantial evidence exists in the record to support the Commissioner's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir.2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995)(quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A District Court cannot conduct a *de novo* review of the Commissioner's decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D.Pa.1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis, *Chenery*, 332 U.S. at 196-197. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's fact finding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1091 (3d Cir.1986).

## VI. Discussion

In support of his Motion for Summary Judgment, Plaintiff argues that the ALJ erred by: (1) "rejecting substantial medical evidence that supports a finding of disability without identifying contrary medical evidence to support his decision," and (2) improperly "rendering his credibility determinations." Plaintiff's Brief (ECF No. 13), at 12-14. The Commissioner counters that the ALJ (1) "properly considered all of the medical opinions of record in making his determination" and (2) properly evaluated Plaintiff's credibility. Defendant's Brief (ECF No. 17), at 17-20.

### A. Assessment of the Medical Opinions

Plaintiff argues that the ALJ improperly rejected the opinion of his treating psychiatrist, Dr. Rock, without identifying contrary medical evidence to support his decision. Plaintiff's Brief (ECF No. 13), at 12-14. Plaintiff argues that this medical report "supports a finding of disability" because it provides that "[t]he amount of time that the Plaintiff is likely to be off task and absent from work would preclude his ability to maintain employment on an ongoing and consistent basis." *Id.* at 13.

If an ALJ does not give the treating physician's opinion controlling weight, then he is to consider the examining relationship, the treating relationship, supportability of the opinion afforded by medical evidence, consistency of opinion with the record as a whole, specialization of the treating physician, and various other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ may discount a medical opinion if it is internally inconsistent or inconsistent with the objective evidence of record. *Id.*; *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (quoting *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)). "The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC

8

determinations." *Chandler v. Comm'r of Soc. Sec*, 667 F.3d 356, 361 (3d Cir. 2011); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Nevertheless, when "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ must make clear on the record his reasons for rejecting the opinion of the treating physician." *Brewster*, 786 F.2d at 585. Further, an ALJ may not discount the opinion of a treating physician without contradictory medical evidence. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

The ALJ concluded that Dr. Rock's opinion was not entitled to controlling weight primarily because he found it to be internally inconsistent. (R. at 27, 431-434). The ALJ provided the following evaluation of Dr. Rock's opinion:

> In March 2012, Dr. Jason Edward Rock, the claimant's treating psychiatrist, completed a medical source statement form on the claimant's behalf (Exhibit 16F). In that form, he explained the claimant has depressive disorder, anxiety disorder, and intermittent explosive disorder. Although he indicated that the claimant could not be expected to work on a regular and consistent basis due to his mental impairments, Dr. Rock reported the claimant has only slight to moderate limitations in work-related activities. In particular, he indicated the claimant has only slight limitations in the ability to remember and follow instructions. Dr. Rock also indicated the claimant has moderate limitations in interacting with others and would require unscheduled breaks in excess of five minutes up to eight times a day (Exhibit 16F). Therefore, the psychiatrist's assessment that the claimant cannot work on a consistent basis is contradicted by his own findings. Pursuant to SSR 96-2p, controlling weight is not given to Dr. Rock's opinions because of this internal inconsistency, as well as the contradictory information provided in the treatment records regarding the claimant's condition and daily activities.

(R. at 27).

The Court has reviewed Dr. Rock's report in its entirety and concludes that the ALJ's reasoning does not support his determination that Dr. Rock's opinion was internally inconsistent. The report completed by Dr. Rock assessed numerous factors and contained specific findings associated with Plaintiff's ability to work, none of which were internally inconsistent. Contrary to the ALJ's assertion, there is nothing inconsistent about a worker that has moderate limitations

9

in interacting with others and slight limitations with the ability to remember and follow instructions, but requires eight unscheduled breaks per day. Indeed, although the vocational expert was not questioned about the number of unscheduled breaks per day that are acceptable to an employer, Dr. Rock's finding that Plaintiff would need eight unscheduled breaks per day in excess of five to ten minutes each seems to support his conclusion that Plaintiff is disabled. *See, e.g., Smith v. Comm'r of Soc. Sec.,* 2009 WL 2762687, *7 (W.D.Pa.2009) (According to the VE, it is customary for an employer to give an employee 3 breaks during the workday.); *Taylor v. Barnhart*, 474 F.Supp.2d 650, 669-670 (According to the VE, unscheduled breaks amounting to an hour a day would exceed normal work tolerances.). Because the ALJ's reasoning regarding this perceived internal inconsistency is invalid on its face, it is not supported by substantial evidence.[8]

Moreover, the Court notes that while the ALJ asserted that there is also contradictory treatment information in the record to discredit Dr. Rock's opinion, the ALJ did not specifically identify any such evidence. In fact, Plaintiff contends that there is other treatment information in the record to support Dr. Rock's opinion. Plaintiff asserts that the finding from Dr. Meyer and Dr. Uran that "Plaintiff would likely have a high rate of absenteeism" supports Dr. Rock's opinion that Plaintiff is disabled. Plaintiff's Brief (ECF No. 13), at 13. The ALJ failed to address or evaluate this portion of Dr. Meyer or Dr. Uran's report. Accordingly, this provides an

---

[8] The Court notes that Defendant argued that the ALJ's rejection of Dr. Rock's opinion was appropriate because at the time the opinion was rendered, Dr. Rock had only examined Plaintiff on one prior occasion. Defendant's Brief (ECF No. 17), at 17-18. While the Court acknowledges that this would ordinarily be a factor for the ALJ to consider in deciding whether to discount Dr. Rock's opinion, *see* 20 CFR §§ 404.1527(c)(2), 416.927(c)(2), the ALJ did not mention this in his decision. Therefore, the Court may not consider this argument to justify the ALJ's conclusion. *See Fargnoli v. Massanari*, 247 F.3d 34, 44 n. 7 (3d Cir. 2001) (a district court may not conduct its own independent analysis on grounds which were not mentioned by the ALJ.); *Chenery*, 318 U.S. at 87)("[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

additional basis to support the Court's conclusion that remand is appropriate under the circumstances.[9]

Therefore, "[o]n remand, the ALJ must consider and make specific findings as to all of the relevant probative medical evidence, including assessing the credibility of the evidence and weighing that evidence." *Farnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001). "Further, to the extent that the ALJ reaches a finding contradictory to that of [Plaintiff's] treating physicians, he must explain the reasoning behind such a finding, including reconciling conflicts and discussing how and why probative evidence supporting [Plaintiff's] claim was discounted and/or rejected." *Id.* Because the vocational expert was not questioned regarding the issues of unscheduled breaks referenced in Dr. Rock's report and absenteeism referenced in the report from Dr. Meyer and Dr. Uran, testimony from a vocational expert on said issues will be beneficial to determine whether jobs exist in the national economy for hypothetical individuals with such limitations. However, it is unnecessary to recontact Dr. Rock regarding his medical report.[10]

---

[9] However, the Court notes that Plaintiff's argument that he is disabled because he was assessed as having a GAF score of 50 by Dr. Meyer and Dr. Uran is misplaced. *See* Plaintiff's Brief (ECF No. 13), at 13. As Defendant correctly points out, the Regulations have clarified that a GAF score "does not have a direct correlation to the severity requirements in the mental disorders listings." 65 Fed. Reg. 50746-01, 50764-50765 (2000); *see also Chanbunmy v. Astrue,* 560 F.Supp.2d 371, 383 (E.D.Pa.2008) (providing that "a GAF score of 45, if credited, would not require a finding of disability"). Moreover, as noted *supra*, the ALJ is solely responsible for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

[10] In his brief, Plaintiff argued that the ALJ erred by failing to recontact Dr. Rock concerning the inconsistencies of his medical report in accordance with 20 C.F.R. §§ 404.1512(f) and 416.912(f). Plaintiff's Brief (ECF No. 13), at 14. However, as the Commissioner points out, said regulations cited by Plaintiff have been deleted. *See* 77 Fed. Reg. 10651-01 (Mar. 26, 2012) ("[w]e are modifying the requirement to recontact your medical source(s) when we need to resolve an inconsistency or insufficiency in the evidence he or she provided. Depending on the nature of the inconsistency or insufficiency, there may be other more appropriate sources from whom we could obtain the information we need."). Moreover, because the Court finds that no inconsistency exists in Dr. Rock's report, the ALJ is not required to recontact Dr. Rock about the report on remand.

### B. Evaluation of Plaintiff's Credibility

When assessing a claimant's credibility regarding the intensity and persistence of his symptoms, an ALJ must compare the claimant's subjective allegations of pain with the objective medical evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c). An ALJ must consider all the evidence before him and "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Russo v. Astrue*, 421 F. App'x 184, 191 (3d Cir. 2011); *Burnett v. Comm'r of Soc. Sec.*, 220 F. 3d 112, 122 (3d Cir. 2000). Reviewing courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess the witness's demeanor." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

Plaintiff contends that the ALJ also erred in assessing Plaintiff's credibility with respect to "his failure to pursue recommended treatment," asserting that "the ALJ did not properly take into account his non-compliance as a symptom of psychiatric illness." Plaintiff's Brief (ECF No. 13), at 14. Plaintiff argues, citing to S.S.R. 82-59, that the "ALJ erred in in assuming that [Plaintiff's] lack of follow through is a reflection of the severity of his condition" because "[t]here is no medical evidence to establish that Plaintiff would be able to work if he pursued the prescribed medical treatment." *Id.* Defendant, however, counters that Plaintiff's reliance on S.S.R. 82-59 "is misplaced because he fails to recognize that this is not a case in which the ALJ denied the claim based upon failure to follow prescribed treatment." Defendant's Brief (ECF No. 17), at 20. Rather, Defendant argues, "the ALJ merely considered Plaintiff's non-compliance with recommended treatment for his physical and mental complaints as one of several factors when determining that Plaintiff's subjective complaints were not fully credible." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), (c)(4)). The Court agrees with Defendant.

S.S.R. 82-59 only applies to situations where benefits are denied to an "[i]ndividual[] with a *disabling impairment* which is amenable to treatment that could be expected to restore [his] ability to work," but he fails to follow the prescribed treatment without "justifiable cause." S.S.R. 82-59 (emphasis in original). Here, the ALJ did not use the Plaintiff's non-compliance to pursue recommended treatment as basis for denial of benefits. Instead, the ALJ merely found that it impacted Plaintiff's credibility, which he is entitled to do. *See* 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4). Additionally, in evaluating Plaintiff's credibility, the ALJ also considered the fact that Plaintiff made inconsistent statements to his treating physicians regarding his condition, and also noted several other factors that caused the ALJ to call Plaintiff's credibility into question. For example, the ALJ pointed out that Plaintiff "reported worsening in his symptoms in May 2012 after reportedly focusing much of his attention on obtaining disability benefits." (R. at 25). Further, the ALJ highlighted inconsistencies between Plaintiff's reported statements in his medical treatment records and his daily activities. (R. at 26). The ALJ found that "[a]lthough the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable." (R. at 25). Such a conclusion is supported by substantial evidence, and thus, the ALJ did not err in his credibility evaluation of Plaintiff. Notwithstanding, a negative evaluation of a Plaintiff's credibility is an insufficient reason to discount the opinion of a treating physician. *Morales*, 225 F.3d at 317.

  C. **Issue of Substance Abuse**

Both the medical record and the ALJ's decision contained references to Plaintiff's substance abuse. The Court notes that Section 105 of the Contract With America Advancement Act of 1996 ("CWAAA") amended the Social Security Act to provide that "an individual shall

not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Commissioner has promulgated regulations to implement this statutory mandate. Under the applicable regulations, the critical question is whether a claimant who is disabled as a result of drug or alcohol abuse would remain disabled if he or she were to stop using those substances. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If his or her disability would persist even after a cessation of drug or alcohol abuse, he or she is entitled to benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). If a claimant's disability would cease in the absence of continued drug or alcohol consumption, a finding of "materiality" is warranted, thereby requiring a denial of benefits. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). When the independent effects of a claimant's impairments cannot be separated from the effects of his or her continued substance abuse, an award of benefits is proper. *Salazar v. Barnhart*, 468 F.3d 615, 622-626 (10th Cir. 2006).

The impact of a claimant's substance abuse does not become relevant unless or until it is determined that he or she is otherwise "disabled." *Brueggemann v. Barnhart*, 348 F.3d 689, 694-695 (8th Cir. 2003). Therefore, because the ALJ determined that Plaintiff was not disabled, he was not obligated to assess whether Plaintiff's abuse of alcohol as documented in the record would preclude his receipt of DIB and SSI benefits. *Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). However, on remand, if the ALJ determines that Plaintiff is disabled, he must consider this issue in light of the regulations referenced above. *Ambrosini*, 727 F.Supp.2d at 432.

## VII. Conclusion

Based on the foregoing, Plaintiff's Motion for Summary Judgment will be granted in part and denied in part. Defendant's Motion for Summary Judgment will be denied. The decision of the Commissioner is vacated, and the matter remanded to the Commissioner for further proceedings in accordance with this Opinion. An appropriate Order follows.

August 27, 2014.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYON J. REINHART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-263 |
| ) | United States Magistrate Judge |
| CAROLYN W. COLVIN, ) | Cynthia Reed Eddy |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

AND NOW, this 27th day of August, 2014, after the Plaintiff, Bryon J. Reinhart, filed an action in the above-captioned case, and after Motions for Summary Judgment (ECF Nos. 12, 16) were filed by the parties,

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Plaintiff (ECF No. 12) is GRANTED, to the extent remand for reconsideration is sought, and DENIED, to the extent reversal and an immediate award of benefits is sought;

IT IS FURTHER ORDERED THAT Defendant's Motion for Summary Judgment (ECF No. 16) is DENIED; and, the decision of the Commissioner of Social Security is VACATED, and the case REMANDED, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further proceedings not inconsistent with the Court's Opinion.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF